LYONS, Appellant,

v.

**FARMERS INSURANCE GROUP OF COMPANIES et al., Appellees.**

[Cite as *Lyons v. Farmers Ins. Group of Companies* (1990), 67 Ohio App.3d 448.]

Court of Appeals of Ohio,
Allen County.

No. 1–88–73.

Decided April 26, 1990.

---

*Gooding, Huffman & Kelley* and *Lawrence A. Huffman,* for appellant.

*Emmon, Hurd, Kegler & Ritter* and *Gene Holliker,* for appellee Farmers Insurance Group.

*Baran, Piper, Tarkowsky & Fitzgerald Co., L.P.A.,* and *Kevin W. Dunham,* for appellee Rex Johnson.

*Daley, Balyeat, Balyeat & Leahy, Robert L. Balyeat* and *Andrew C. Balyeat,* for appellees Motorists Mutual Insurance Co. and Don Ritchey.

*Dennis Day Lager,* for appellee Ken McGuire.

*John Moul,* for appellee Douglas Stimmel.

---

THOMAS F. BRYANT, Judge.

This is an appeal from a judgment of the Court of Common Pleas of Allen County granting summary judgment in favor of the defendants-appellees, Rex Johnson, Don Ritchey, Motorists Mutual Insurance, and Ken McGuire.

On October 30, 1987, plaintiff-appellant, Jeffrey L. Lyons, filed a complaint against Farmers Insurance Group of Companies, Farmers' employees Rex Johnson and Douglas Stimmel, Motorists Mutual Insurance, and Motorists' employee Don Ritchey. The complaint alleged slander *per se.* Specifically the complaint alleged the parties had stated that appellant was a user and abuser of cocaine. Subsequently Stimmel was dropped from the suit and Farmers' employee, Ken McGuire, was made a party in an amended complaint filed May 24, 1988.

Farmers Insurance Group of Companies was granted summary judgment on October 19, 1988. Appellees filed their motions for summary judgment on October 27 and October 28, 1988. Appellees' motions for summary judgment were granted on November 16, 1990.

It is from this judgment appellant now appeals asserting three assignments of error. Appellant's first assignment of error is:

"The trial court erred in finding that the statute of limitations accrues at the time the alleged slanderer's words were spoken whether the plaintiff had knowledge or not."

■ R.C. 2305.11 establishes the statute of limitations in an action for slander at one year after the cause accrues. *Rainey v. Shaffer* (1983), 8 Ohio App.3d 262, 8 OBR 354, 456 N.E.2d 1328, syllabus, interprets the statute to begin running "from the time the alleged slanderer's words were spoken, whether the plaintiff had knowledge or not. The burden of proving the running of the statute of limitations is on the defendant."

Appellant urges us to adopt the "discovery rule" used in malpractice actions for determining when the statute of limitations beings to run in slander actions. Appellant presents no Ohio law to support his position other than the adoption of such a rule in medical malpractice actions. Appellant does cite cases from several other states and federal courts to support his position.

Appellant is concerned about the trial court's determination that McGuire cannot be sued for slander since the statute of limitations ran prior to the filing of the amended complaint. Appellant claims that McGuire was the original source of the slanderous remarks and should not be allowed to escape liability when his identity was deliberately withheld from appellant until after the statute of limitations had run.

We are unwilling to adopt appellant's position on this assignment of error. The running of the statute of limitations is a defense that must be asserted and proven by the defendant. We believe this burden of proof is sufficient to protect the rights of the plaintiff in a slander action. Failure to assert and prove the running of the statute of limitations leaves the defendant open to liability. In the case before us, the alleged slander by McGuire took place in the fall or winter of 1986. Appellant filed his amended complaint on May 24, 1988 more than a year after the cause accrued under the rule announced in *Rainey.* Appellant's assignment of error is overruled.

Appellant's second assignment of error is:

"The court erred in finding that defendants' remarks were a privileged communication while bound by the standard of review in Civil Rule 56(C)."

■ The alleged slanderous communications took place as follows. As part of his job responsibilities with Farmers, Johnson was investigating some improper actions attributed to Lyons who was also employed by Farmers. McGuire was the district manager for Farmers and Lyons. McGuire and Johnson discussed the irregularities in Lyons' handling of certain transactions and also discussed the fact that one of the parties to one of the transactions had been previously arrested for using cocaine. At this point a question was

raised by McGuire as to whether Lyons might also be using drugs. Johnson understood McGuire to be referring to possible cocaine use by Lyons.

Lyons eventually resigned from Farmers due to the insurance transaction irregularities. Lyons applied to Motorists Mutual Insurance to become an agent. After his conversation with McGuire concerning the Lyons investigation, Johnson played in a basketball game one evening which included Ritchey, a district sales manager for Motorists. As part of his job responsibilities, Ritchey interviews prospective agents for Motorists. Prior to the start of the game, Ritchey asked Johnson if he knew Lyons. Johnson told Ritchey about Lyons' irregular insurance transactions with Farmers and that he had heard about the possibility of Lyons' using cocaine.

Lyons was not hired by Motorists and subsequently applied for a job with Kesner Insurance Agency. Kesner Insurance Agency has a continuing business relationship with Motorists Mutual Insurance. Kesner writes policies with Motorists for automobile, home owners, marine, and life insurance. As a district manager for Motorists, Ritchey is the first person the Kesner agency would contact for assistance on a policy. During business conversations with John Kesner and Jerome Kesner, Ritchey was told that Lyons was being considered for employment with the Kesner agency. Ritchey informed them that he had heard there was a possibility that Lyons used cocaine. Prior to hiring Lyons the Kesner agency asked Lyons if he used drugs. Lyons denied using drugs and was eventually hired by Kesner Insurance Agency.

*Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 72 O.O.2d 134, 331 N.E.2d 713, establishes the proper review for slander cases when as here the defense of privilege is asserted.

" 'Conditional or qualified privilege is based on public policy. It does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege, *and makes a showing of falsity and actual malice essential to the right of recovery.*' " *Hahn, supra,* at 244, 72 O.O.2d at 138, 331 N.E.2d 718.

" ' "A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do. This general idea has been otherwise expressed as follows: A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains

matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits." '  * * *

" ' " * * * 'All that is necessary to entitle such communications to be regarded as privileged is, that the relation of the parties should be such as to afford reasonable ground for supposing an innocent motive for giving information, and to deprive the act of an appearance of officious intermeddling with the affairs of others.' " ' " (Emphasis deleted.) *Hahn, supra,* at 245–246, 72 O.O.2d at 139–140, 331 N.E.2d at 719–720.

"Summary judgment may only be granted where, construing the evidence most strongly in favor of the party against whom the motion is made, reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Civ.R. 56(C)." *Stearns v. Ohio Savings Assn.* (1984), 15 Ohio App.3d 18, 19, 15 OBR 39, 40, 472 N.E.2d 372, 373.

The trial court determined that the statements made by McGuire, Johnson, and Ritchey were qualifiedly privileged. We must agree. When we apply the doctrine of *Hahn* we are compelled to find that each of the defendants reasonably believed circumstances existed which required him to make the alleged slanderous communication. McGuire was attempting to assist Johnson in his investigation of Lyons' irregular transactions. Johnson as a social friend of Ritchey felt he had an obligation as a Farmers investigator to assist Ritchey, a member of the insurance community, upon his request in acquiring information potentially useful in his hiring duties as a Motorists employee. As a district manager for Motorists Ritchey believed that as an agent for Motorists, Kesner Insurance Agency should know of Ritchey's concerns about Lyons. Even when the evidence is construed most strongly in favor of the appellant, reasonable minds must conclude that each of the appellees was qualifiedly privileged to make the communications that were made.

Appellant has presented no evidence to indicate that any of the appellees should lose the protection of the privilege because the alleged slander was communicated to anyone other than those who are mentioned in this case. See *Smith v. Klein* (1985), 23 Ohio App.3d 146, 23 OBR 387, 492 N.E.2d 852, syllabus.

Appellant also has not presented sufficient evidence from which, when construed most strongly in his favor, reasonable minds can conclude any of appellees were motivated by actual malice. "If a defendant submits evidence indicating that his statements were qualifiedly privileged, then the plaintiff has the additional burden of showing that the defendant exceeded the privilege." *Smith, supra,* at syllabus. "A qualified privilege protecting the making of defamatory statements is exceeded when the statements are made with 'actual malice,' that is, with knowledge that the statements are false or with reckless disregard of whether they were false or not." *Hahn, supra,* at syllabus. The appellant may not recover even though he shows that the " 'defendant used language actionable per se and that the same was, false, unless he goes further and shows *that in using same, defendant was moved by actual malice, such as ill will, spite, grudge or some ulterior motive.' "* (Emphasis added.) *Hahn, supra,* at 248, 72 O.O.2d at 141, 331 N.E.2d at 721. As evidence of actual malice appellant contends the appellees had a duty to inquire from him as to the truth of the statements. We disagree. The only burden on the appellees before communicating their statements is that they not possess knowledge that the statements are false or that they not act with reckless disregard for the truth through ill will, spite, grudge, or some ulterior motive. Appellant failed to present to the trial court appellees' knowledge that the statements were false or that they were motivated by ill will, spite, grudge, or ulterior motive. Appellant's second assignment of error is overruled.

Appellant's third assignment of error is:

"The court erred in finding that no slander occurred because the slander *per se* was not 'definitely' stated."

Appellant's third assignment of error arises from paragraph six of the trial court's judgment entry, which states:

"There is no evidence that Ken McGuire ever definately [*sic*] accused plaintiff of using any drugs. There is no evidence that except for the investigation or inquiry about the claims concurrent with plaintiff's resignation that Ken McGuire ever made any statements regarding plaintiff's use of drugs to any third parties. Ken McQuire could not specifically recall that he had ever used the term cocaine. Rex Johnson, in his deposition, indicated that the word cocaine was used. For the purpose of this ruling the Court finds this to be immaterial."

To understand why the trial court determined that the dispute as to the actual statements made by McGuire is immaterial to a determination of summary judgment it is necessary to read on to paragraph eight of the judgment entry. The trial court stated in part:

"In the plaintiff's Amended Complaint filed May 24, 1988, Ken McGuire was first joined as a party defendant although the Amended Complaint sets forth that the slander, if any, was made in November 1986. As to Ken McGuire personally, the Court agrees with the citation set forth in the Farmers Insurance briefs including particularly *Rainey vs Shaffer* (1983) 8 OHIO APP 3d 262 [8 OBR 354, 456 N.E.2d 1328]. The statute of limitations begins to run from the time the alleged slanderer's words were spoken whether the plaintiff had knowledge or not. Although the burden of proving the running of the statute of limitations is on the defendant the Court finds it clearly established that under R.C. 2305.11(A) the one year had expired prior to plaintiff's bringing suit against Ken McGuire."

In paragraph eleven, the trial court determined that the remarks made by McGuire were privileged and that there was no evidence presented to prove actual malice.

"Summary judgment requires there be no genuine issue as to any *material fact*. Where an alleged fact * * * is not a material fact and which, even if proved, would not entitle the plaintiff to recover, such alleged fact is an immaterial fact and not within the meaning of the term 'genuine issue as to any material fact.' *Clark v. Meigs Equipment Co.* (1967), 10 Ohio App.2d 157, 161 [39 O.O.2d 325, 327–328, 226 N.E.2d 791, 793–794]." *Finch v. Kabana* (1990), 67 Ohio App.3d 29, 585 N.E.2d 963. The factual question as to what Ken McGuire actually communicated to Rex Johnson is immaterial because a determination of the statement does not alter the outcome when the defenses of privilege and running of the statute of limitations are applied.

Appellant in his brief apparently is under the impression that paragraph eight impacts on the determination of slander *per se* as to the statements made by Rex Johnson and Don Ritchey. This is an incorrect interpretation of the clear import of the trial court's judgment entry. The trial court's decision that the actual content of McGuire's statements are immaterial does not impact on the determination of whether Johnson's and Ritchey's statements were slanderous *per se*. Appellant's third assignment of error is overruled.

For the reasons stated above, and upon the authorities cited and discussed the judgment of the Court of Common Pleas of Allen County is affirmed.

*Judgment affirmed.*

SHAW, P.J., and MILLER, J., concur.